O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-2852 PSG (FFMx) | Date | September 25, 2008 |
|---|---|---|---|
| Title | Scientific Weight Loss, LLC, et al. v. U.S. Medical Care Holdings, LLC, et al. | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge |
|---|---|

| Wendy K. Hernandez | Not Present | n/a |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings:**     **(In Chambers) Order DENYING Plaintiffs' Application for a TRO**

Pending before this Court is Plaintiffs' Application for a TRO. The Court finds the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; Local R. 7-15. After considering the moving and opposing papers, the Court DENIES Plaintiffs' Application.

I.     Background

Plaintiff Scientific Weight Loss, LLC ("SWL") is a franchisee with an allegedly exclusive license to use all trademarks, trade names, and service marks ("the Marks") in connection with selling "Smart for Life" meal replacement cookies, soups, shakes, and muffins in the State of California. (TRO App. 1:3-9.) Plaintiffs Larry Brahim, Anthony Podell, and Irving Posalski are managing members in SWL. (TRO App. 3:24-25.) Collectively, SWL and the individual plaintiffs are herein referred to as "Plaintiffs." The cookies and other products are part of the franchised Smart for Life medically-supervised weight loss program (the "Medical Program"). (TRO App. 1:9-11.) Defendant U.S. Medical Care Holdings, LLC ("USMCH") owns the registered trademark "Smart for Life" and sells franchises to market the Medical Program. (Opp. 10:1-8; Moulavi Decl. ¶¶ 5,8.) Defendants Lavi Enterprises, LLC, Doctors Nutrition, LLC, Doctors Scientific Organica, LLC, Oyster Management Services Ltd., Sasson E. Moulavi, and Richard Kayne are related entities and individuals who are allegedly sponsoring the unfairly competing Smart for Life "Direct Response" program. (TRO App. 1:11-17.) Collectively, USMCH and the other defendants are herein referred to as "Defendants."

In 2002, Moulavi began creating companies to market and franchise what was originally known as Dr. Siegal's System, a medically-supervised diet based upon specially prepared food

**O**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 08-2852 PSG (FFMx) | Date | September 25, 2008 |
|---|---|---|---|
| Title | Scientific Weight Loss, LLC, et al. v. U.S. Medical Care Holdings, LLC, et al. | | |

items with appetite-suppressing enzymes provided in the form of cookies, shakes, soups, and muffins meant to be eaten instead of regular meals.  (Brahim Decl., Ex. G to Plaintiff's Request for Judicial Notice, hereinafter "RFJN," ¶ 8.)  The Medical Program requires medical supervision because it restricts caloric intake to approximately 800 calories a day, which carries health risks.  (*Id.* ¶ 9.)  After USMCH severed its ties with the developer of the Siegal System, it began selling the diet cookies and other products under the Smart for Life trademark.  (Moulavi Decl. ¶ 26.)

Effective February 10, 2006, Plaintiff SWL entered into an Area Representative Agreement (the "ARA") with Defendant USMCH.[1]  (RFJN Ex. F at Ex. A.)  Pursuant to the ARA, SWL was to act as the Smart for Life franchise representative and to solicit, market, and sell Smart for Life franchise rights throughout California.  (RFJN Ex. G ¶ 4.)  Further, SWL itself was allowed to own one or more Smart for Life Weight Loss Center franchises in Southern California, but each franchise required a separate agreement between USMCH and the entity or individual that actually owned the franchise.  (Moulavi Decl. ¶ 18.)  SWL is currently a party to only one franchise agreement, which covers the Torrance Weight Loss Center ("the Torrance Franchise Agreement").  (*Id.*)

Under the ARA, USMCH was bound not to "sell or offer to sell Proprietary Products through websites or other distribution channels other than Siegal Centers (i.e., grocery stores, kiosks, retail locations) in the Territory without [SWL's] consent."  (RFJN Ex. F at Ex. A § 5(d)(iv).)  "Proprietary Products" are defined under the ARA as "those food and drink products that are sold to customers as part of the diet they follow to assist in their weight management."  (*Id.* § 1(j).)

In 2007, Moulavi developed a 1200 calories-a-day diet program that did not require medical supervision ("the Non-Medical Diet").  (Moulavi Decl. ¶¶ 35-38.)  The Non-Medical Diet was also based on appetite-suppressing cookies (the "Non-Medical Cookies"), which did not need to be sold exclusively through the Weight Loss Centers.  (*Id.*)  Defendants developed this program after market research revealed that only 20 percent of all dieters were interested in following a plan that required medical supervision.  (Id. ¶ 36.) According to Defendants, the Non-Medical Diet was not a replacement for the diet requiring medical supervision.  (Opp. 10:20-2.)  Rather, Defendants claim, the Non-Medical Diet was designed to increase the Weight

---

[1] According to Defendants, the individual Plaintiffs are members of SWL but are not parties to the ARA or to any Smart for Life franchise agreement.  (Moulavi Decl. ¶ 18.)

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 08-2852 PSG (FFMx) | Date | September 25, 2008 |
|---|---|---|---|
| Title | Scientific Weight Loss, LLC, et al. v. U.S. Medical Care Holdings, LLC, et al. | | |

Loss Centers' revenues by providing them with patient leads. (*Id.* at 21-28.) Defendants developed an advertising program to promote the Smart for Life brand, including both the Medical Diet administered through the Weight Loss Centers and the non-medical food products, which were available on the Smart for Life website. (Moulavi Decl. ¶ 38.) This advertising campaign is referred to as the Direct Response ("DR") Program. (*Id.*) In September 2007, USMCH presented the DR Program to its franchisees, and 80 percent of the franchised Weight Loss Centers decided to participate. (Moulavi Decl. ¶ 41.) SWL declined to participate in the DR Program. (*Id.*)

On February 1, 2008, pursuant to Section 18 of the ARA, which provides for termination on thirty days notice, USMCH sent SWL a written Notice of Termination ("the Termination Letter"). The Termination Letter laid out a number of grounds for termination of the ARA, including failure to pay scheduled fees under the Agreement and failure to sell the number of franchises required by the Agreement. (*See* Ex. J to Moulavi Decl.) Plaintiffs neglect to mention in their application for a TRO that the ARA was terminated months ago. Accordingly, the only contract between USMCH and SWL that remains in effect is the Torrance Weight Loss Center Franchise Agreement (the "Torrance Agreement"). In the Torrance Agreement, USMCH reserved the right:

> to sell, and provide the Products Services authorized for sale by, SIEGAL Centers under the Marks or other trade names, trademarks, service marks and commercial symbols through similar or dissimilar channels which are not accessible by a SIEGAL Center (like telephone, mail order, kiosk, co-branded sites, or through alternative channels of distribution like: mail orders, sites located within other retail businesses, stadiums, Intranet, Internet, websites, wireless, email or other forms of e-commerce) for distribution within and outside of your Marketing Area or Protected Area and pursuant to such terms and conditions as we consider appropriate . . . .

(Torrance Franchise Agreement § 2.3(d), Ex. B to Moulavi Decl.)

On May 1, 2008, Plaintiffs filed suit against Defendants, alleging twelve causes of action, including unfair competition, fraud, and breach of contract. (*See* Complaint.) Plaintiffs also filed a motion for a preliminary injunction to prevent Defendants from using the Smart for Life Marks in connection with the sale of the non-medically-supervised diet products in California. In an Order issued May 19, 2008, the Court approved the parties' stipulation to stay the motion for a preliminary injunction. On August 6, 2008, Plaintiffs filed a request to set the motion for

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-2852 PSG (FFMx) | Date | September 25, 2008 |
|---|---|---|---|
| Title | Scientific Weight Loss, LLC, et al. v. U.S. Medical Care Holdings, LLC, et al. | | |

preliminary injunction for hearing on September 15, 2008.  On August 28, 2008, the Court issued an order approving another stipulation continuing the motion until October 6, 2008.  On September 22, 2008, Plaintiffs filed the present application for a Temporary Restraining Order ("TRO") to enjoin Defendants from using the Smart for Life Marks in connection with advertising and selling the non-medically-supervised products in California.

II.     Legal Standard

        In the Ninth Circuit, "a court may issue a preliminary injunction if it determines: (1) the moving party will suffer irreparable injury if the relief is denied; (2) the moving party will probably prevail on the merits; (3) the balance of potential harm favors the moving party; and, depending on the nature of the case, (4) the public interest favors granting relief."  *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 822 (9th Cir. 1993) (citation omitted).  The Ninth Circuit "has also adopted an 'alternative standard' under which the moving party may meet its burden by demonstrating *either*: (1) a combination of probable success on the merits and the possibility of irreparable injury if relief is not granted; or (2) the existence of serious questions going to the merits and that the balance of hardships tips sharply in its favor. . . . The alternative standards are not separate tests but the outer reaches of a single continuum. . . . Essentially, the trial court must balance the equities in the exercise of its discretion."  *Id.*

III.    Discussion

        Plaintiffs maintain that they are likely to succeed on the merits of their Lanham Act claims.[2]  The Complaint sets forth two causes of action for violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  The first is captioned "unfair competition - false advertising," and the second, "unfair competition - likelihood of confusion."  It appears that Plaintiffs are alleging claims for both false advertising and false designation of origin pursuant to § 1125(a).  At times, Plaintiffs seem to be combining these two causes of action into a generalized unfair competition claim, particularly in their application for a TRO.  However, the claims are distinct and require separate consideration. *Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*, 277 F.3d 253, 259 (2d Cir. 2002).

---

        [2] As Plaintiffs have not briefed their likelihood of success on any of their other causes of action, the Court will only consider Plaintiffs' Lanham Act claims in determining whether to grant the TRO.

**O**

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-2852 PSG (FFMx) | Date | September 25, 2008 |
|---|---|---|---|
| Title | Scientific Weight Loss, LLC, et al. v. U.S. Medical Care Holdings, LLC, et al. | | |

To successfully maintain an action for false designation of origin under § 1125(a), the plaintiff must prove that the defendant's use of the same or similar mark creates a likelihood of consumer confusion. *Murray v. Cable Nat. Broad. Co.*, 86 F.3d 858, 869 (9th Cir. 1996). To prevail on a false advertising claim, a plaintiff must show that: 1) the defendant made a false statement about the plaintiff's or its own product; (2) the statement was made in commercial advertisement or promotion; (3) the statement actually deceived or had a tendency to deceive a substantial segment of its audience, (4) the deception is material, (5) the defendant cause its false statement to enter interstate commerce, and (6) the plaintiff has been or is likely to be injured as a result, either by direct diversion of sales from itself to defendant or by a lessening of goodwill associated with the plaintiff's product. *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1052 (9th Cir. 2008) (citing *Jarrow Formulas, Inc. v. Nutrition Now, Inc*., 304 F.3d 829 (9th Cir. 2002)).

Plaintiffs concede that Defendants are the licensors of the Smart for Life Marks. (TRO App. 1:11-15.) Accordingly, Plaintiffs cannot prevail on their claim for false designation of origin as a matter of law.[3] A licensee has no right to sue the licensor of a trademark for creating a likelihood of confusion, even if the licensee was granted the exclusive right to use the mark. *Tap Publ'ns, Inc. v. Chinese Yellow Pages (New York) Inc*., 925 F. Supp. 212, 216 (S.D.N.Y. 1996); *see also Twentieth Century Fox*, 277 F.3d at 259 (licensee of trademark cannot sue licensor for false designation of origin). Further, Plaintiffs cannot claim that Defendants have impaired the goodwill in the Torrance Weight Loss Center and/or the diet products associated

---

[3] Plaintiffs have hurt their case for a TRO by conflating their Lanham Act unfair competition claims with a trademark infringement claim throughout their TRO application. (*See* TRO App. 14:13-15:2.) For example, Plaintiffs argue that courts have held that "injury to a trademark is irreparable injury." (TRO App. 16:3-4.) Yet Plaintiffs cannot bring a trademark claim against Defendants, the licensors of the Marks.

The Court warns Plaintiffs' counsel that Rule 11 sanctions may be imposed when a party files a frivolous claim, despite the fact that the filing contains other meritorious claims. *See Cross & Cross Props., Ltd. v. Everett Allied Co.*, 886 F.2d 497, 505 (2d Cir. 1989). Rule 11 is violated when it is "patently clear that a claim has absolutely no chance of success under the existing precedents, and . . . no reasonable argument can be advanced to extend, modify, or reverse the law as it stands . . . ." *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir. 1985). This rule presupposes that an attorney will engage in reasonable legal research before filing a claim.

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-2852 PSG (FFMx) | Date | September 25, 2008 |
|---|---|---|---|
| Title | Scientific Weight Loss, LLC, et al. v. U.S. Medical Care Holdings, LLC, et al. | | |

with the Smart for Life Marks because they do not own those Marks or the associated goodwill. *Twentieth Century Fox*, 277 F.3d at 259.  Although Plaintiffs have characterized their cause of action as a violation of the Lanham Act, what they are really claiming is that Defendants breached the Area Representative Agreement and/or the Torrance Franchise Agreement by violating Plaintiffs' allegedly exclusive right to sell Smart for Life products in California.  "The mere fact that a trademark was the subject of the contract does not convert a state-law breach of contract issue into a federal Lanham Act claim."  *Id.*

Nevertheless, a licensee is not precluded from pursuing a claim against the licensor for false advertising under the Lanham Act if the licensor has made false claims to promote a competing product, allegedly to the detriment of its licensee.  *Id.*  Here, Plaintiffs have alleged that

> [t]o the extent the Smart for Life advertising - including without limitation the Smart for Life website - contains testimonials demonstrating weight loss results for clients of the medically supervised System, those testimonials are false, fraudulent, and misleading when utilized in connection with the offering for sale and selling of Defendants' wrongfully competing higher calorie non-medically supervised cookies over the Internet and through the call centers identified in the television commercial.

(Compl. ¶ 32.)  However, Plaintiffs have failed to establish a likelihood of success on its false advertising claim.

As set forth above, to prevail on a false advertising claim, a plaintiff must show that: 1) the defendant made a false statement about the plaintiff's or its own product; (2) the statement was made in commercial advertisement or promotion; (3) the statement actually deceived or had a tendency to deceive a substantial segment of its audience, (4) the deception is material, (5) the defendant cause its false statement to enter interstate commerce, and (6) the plaintiff has been or is likely to be injured as a result, either by direct diversion of sales from itself to defendant or by a lessening of goodwill associated with the plaintiff's product.  *Newcal Indus.,* 513 F.3d at 1052. Plaintiffs have failed to satisfy the first prong of this test, as they have not identified a single false statement allegedly made by Defendants in connection with advertising the Smart for Life non-medical diet products.  Instead, the TRO application centers around the assertion that Defendant's "use of the Marks is likely to cause confusion as to the affiliation, connection, or association of their meal replacement products with those sold and offered by Plaintiffs."  (TRO App. 12:16-18.)  Plaintiffs devote significant space in their brief to the eight-factor consumer

**O**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-2852 PSG (FFMx) | Date | September 25, 2008 |
|---|---|---|---|
| Title | Scientific Weight Loss, LLC, et al. v. U.S. Medical Care Holdings, LLC, et al. | | |

confusion standard typically applied in trademark infringement actions.  (TRO App. 12:12-14:14.)  They have also submitted pictures of the packaging for the medical and non-medical Smart for Life products in an attempt to establish their similarity.

In sum, Plaintiffs complain that Defendants are selling Non-Medical Cookies that consumers are likely to confuse with the Medical Cookies sold through the Torrance Weight Loss Center.  This constitutes a trademark infringement claim and/or a false designation of origin claim, not a false advertising claim.[4]  Tellingly, Plaintiffs conclude their argument regarding their likelihood of success on the merits by asserting that they have "resoundingly" demonstrated that they will "prevail on [their] trademark claims under Section 1125(a)." (TRO App. 14:13-14.)  The Court also notes that Plaintiffs are not seeking to merely prevent Defendants from making allegedly false statements in their advertising, but to enjoin Defendants entirely from using the Smart for Life Marks in connection with the advertisement and sale of the non-medical products.

For the foregoing reasons, the Court concludes that Plaintiffs have failed to establish a reasonable probability of success on the merits of either of their Lanham Act claims.  Because Plaintiffs have not shown a likelihood of success on the merits, the Court need not address whether denial of the TRO will lead to irreparable injury.  *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1385 (9th Cir. 1987).  The Court notes, however, that by Plaintiffs' own admission, Defendants notified Plaintiffs on August 26, 2008 that they were no longer willing to refrain from shipping Non-Medical Cookies to California.  (TRO App. 2:11-13.)  Defendants soon thereafter made the products available through the Costco.com website.  However, Plaintiffs did not seek a TRO until September 22, 2008.  Plaintiffs' delay in seeking injunctive relief for nearly a month belies their claim that they will suffer immediate irreparable injury absent a TRO.

IV.    Conclusion

For the foregoing reasons, the Court DENIES Plaintiffs' application for a TRO.

---

[4]  Alternatively, the heart of Plaintiffs' argument is that Defendants should be enjoined from selling trademarked Smart for Life Products in California, since Plaintiffs allegedly have an exclusive license to sell those products within the state.  However, as discussed above, this is properly characterized as a breach of contract claim, not a Lanham Act claim.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2852 PSG (FFMx) | Date | September 25, 2008 |
|----------|----------------------|------|--------------------|
| Title | Scientific Weight Loss, LLC, et al. v. U.S. Medical Care Holdings, LLC, et al. | | |

**IT IS SO ORDERED.**